## Fidelity & Deposit Company of Maryland v. Charles Hegewald Company.

(Decided October 12, 1911.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Liens—Repairing Machinery—Claim Against Assigned Estate for Repair of Machinery.— A claim for the repair of machinery which was necessary in order to enable a contract for the construction of sewers to be carried out was properly allowed, the service rendered being such as a mechanic's lien could have been asserted for. The man who renders this sort of service is as much entitled to the benefit of the statute as the man who hauls lumber to a place where a building is being erected.

2. Same.—The form of the bond executed is such that it is not necessary for those who furnished labor to the contracting company to first establish a mechanic's lien.

FAIRLEIGH, STRAUS & FAIRLEIGH for appellant.

KOHN, BAIRD, SLOSS & KOHN for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

In the fall of 1908 The Weber Company, a Chicago corporation, entered into a contract with the Commissioners of Sewerage of the City of Louisville, by which it undertook to construct for the Commissioners

Section D of the system of sewers contemplated by said Commissioners, and it executed to the Commissioners a bond for the faithful performance of its contract with the Fidelity & Deposit Company of Maryland as surety. Among other things it was stipulated in the bond that The Weber Company "shall pay for all labor performed or furnished and for all materials used in the carrying out of said contract." In the course of its work, and in order to enable it to speedily carry out its contract, the construction company caused to be placed on the ground, for use in excavating for and in building the sewer, certain machines, to wit: a clam shell digger, locomotive crane, concrete mixer, locomotive crane boiler, and sand dryer. After having been used for some time, these machines became out of repair, and the Charles Hegewald Company was employed by the construction company to repair them and replace certain worn out parts thereof, so that they could be used in the completion of the work. The cost of this work so done upon the machines amounted to $354.31, which sum remained unpaid. Thereafter The Weber Company became financially embarrassed, abandoned its work, made an assignment for the benefit of its creditors, and its surety took possession of and completed the work as provided for in the contract. The assignee of the construction company instituted a suit for the settlement of the assigned estate. Among the claims presented was that of the Charles Hegewald Company for the services rendered as above indicated. The surety, the Fidelity & Deposit Company of Maryland, demurred to the claim of the Hegewald Company, which demurrer was overruled; and a judgment was entered against the Fidelity & Deposit Company for the amount of the Hegewald Company's claim. From that judgment the Fidelity & Deposit Company of Maryland prosecutes this appeal.

It is conceded by the appellant that the form of the bond executed by it is such that it is not necessary for those who supplied materials or furnished labor to the Weber Company to first establish a mechanic's lien before recovery of the bond could be had. While the bond does not require that a mechanic's or a materialman's lien shold be established before a claim could be asserted against the surety, it is apparent that the surety would not be liable for any claim for services rendered or material furnished which the person so

rendering such service or furnishing such material could not take out a mechanic's or materialman's lien for. The test, then, of the correctness of the ruling of the trial court in this is, was the service rendered by appellee such a service as it would have been entitled to have asserted a mechanic's lien for. If so, the judgment is clearly correct, if not, it should be reversed.

It will be observed that the bond does not limit the surety's liability to pay only for all labor performed or furnished and material used in the work, but for such labor and material as is used in the carrying out of the contract. In order to carry out the contract it was essential that the construction company should have the machinery which it used in the work. This machinery could only be serviceable when it was in order. When its parts were worn or dulled it would not properly do the work. The workmen engaged in the work were necessarily depending upon the concrete mixer and locomotive crane and shell digger and sand dryer, etc., to prepare for and carry on the work, just as the brick masons were depending on the scaffolding which would have to be erected from time to time to enable them to lay the brick, or turn the arch of the sewer. The work of repairing these machines and supplying the necessary parts was as essential in order to carry out the contract as was the work of the carpenter in building the scaffolding upon which the brick mason could stand to use the mortar which had been mixed by the concrete mixer. Neither went into the building of the sewer. When completed the machinery would be carted away to be used in other places. And so, likewise, when completed, the scaffolding would be taken away.

In the case of Title Guaranty & Trust Co. v. Crane Co., 219 U. S. 24, decided January 15, 1911, the court said, in holding that the Crane Company was entitled to pay for certain patterns which it had furnished a contractor engaged in building a government boat—

"Of the other class are the claims for patterns furnished to the molding department of the Puget Sound Engine Works. As was said by the Judge below, those who furnish the patterns have as fair a claim to be protected as those who erect the scaffolding upon which the carpenters stand in doing their work upon the ship."

In that case the obligation of the bond was— .

"that such contractor or contractors shall promptly make payments to all persons supplying him or them

with labor and material in the prosecution of the work."

The language of the bond under consideration is as broad as that in the bond which was passed upon by the Supreme Court in the Crane case, supra. The patterns, while used in building the ship, did not become a part of it, and yet the bond was held liable for the cost thereof. Here the machinery, while it did not, of course, become a part of the sewer, was nevertheless used in its construction, and appellant was properly chargeable for such labor as was expended by appellee in rendering this machinery suitable for service.

And as said by this Court in the recent case of Avery & Sons v. Woodruff and Cahill, 144 Ky. 227—

"It will be noticed that the statute nowhere requires that the labor performed and material furnished shall become a part of and remain in the building after its completion. It merely gives a lien to the persons who perform labor or furnish material in the erection of the building or the improvement of real estate in any manner. To give the statute the strict construction contended for by appellants would prevent persons who perform labor in the erection of a building, but who do not actually perform labor on the building, from obtaining a lien, as their labor does not remain a part of the building. This construction would be in conflict with the case of Fowler & Guy v. Pompelly, 25 Ky. Law Rep. 615, wherein the court in considering a claim for hauling frames, dressed lumber, laths, etc., to a lot where a building was being constructed, said: "'It is conceded that the materialman who furnished these articles to appellant to haul and the laborers and the contractor who actually erected the building, have liens for the material furnished and the labor performed, yet it is claimed by appellee that these appellants, who performed labor just as necessary to the erection of the building as the persons who furnished the material or the persons who nailed the lumber on the building, have no lien. We cannot agree to this construction of the statute. In our opinion, under a proper construction of the statute, they are just as much entitled to a lien for their services as any of the persons named.''

If the man who hauls lumber to a place where a building was to be erected is entitled to the benefit of the statute, and have his services protected by a lien on the building in which the lumber so hauled by him was used, there is at least as much reason why the man

who made serviceable the machinery, itself necessary in constructing this sewer, should likewise be protected.

This view being in accord with the finding of the Chancellor, the judgment is affirmed.