## Standard Oil Company of New Jersey v. National Surety Company

(Decided June 10, 1930.)

JOHNSON & HINTON for appellant.

STRATTON & STEPHENSON for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

The Farris Bridge Company had a contract with the state highway commission for the construction of a highway bridge in Floyd county, Ky. It purchased materials from the Standard Oil Company, which were used in performing the contract. Being unable to collect the purchase price of the materials, a judgment therefor against the Farris Bridge Company was procured in the Pike circuit court. The Standard Oil Company then instituted the present action against the National Surety Company to recover its judgment debt. The action was based upon the bond given by the defendant as surety for the Farris Bridge Company. The petition as amended was dismissed on demurrer, and the plaintiff has prosecuted an appeal.

The contract of the Farris Bridge Company with the state highway commission contained these provisions:

"That the party of the second part (Farris Bridge Company) for and in consideration of the payment or payments hereinafter specified, hereby

agrees under penalty expressed in the bond hereunto attached, to furnish and deliver all materials and do and perform all the work and labor required in the construction of . . . . (certain bridge work) . . . . In consideration whereof said party of the first part (Commonwealth of Kentucky), agrees to pay to the said party of the second part for all work done the following unit prices, which prices include payment for equipment, forms, tools, labor, material and incidental work necessary to make a complete structure. . . . ''

The bond given pursuant to the contract, and which was signed by the National Surety Company, contained this condition:

"The condition of this obligation is such that if the said principal, Farris Bridge Company, of Cumberland Maryland, shall well and truly keep and perform all of the terms and conditions of a certain contract made and entered into on the 3rd day of February, 1926, by and between the Commonwealth of Kentucky, by and through its State Highway Commission, and the said Farris Bridge Company, principal . . . on their part to be kept and performed and shall indemnify the said Commonwealth of Kentucky as therein stipulated then this obligation shall have no effect, otherwise it shall remain in full force and effect."

We have in Kentucky two distinct lines of decision in cases of this character. If the bond, when read in connection with the contract, contains a provision obligating the contractor to pay for the material, or to compensate the laborers, it constitutes a provision for the benefit of the laborers and materialmen, upon which they are entitled to maintain an action directly against the surety. Federal Union Surety Co. v. Commonwealth, 139 Ky. 92, 129 S. W. 335; Fidelity & Deposit Co. of Maryland v. Chas. Hegewald Co., 144 Ky. 790, 139 S. W. 975; Citizens' Trust & Guaranty Co. v. Peebles Paving Brick Co., 174 Ky. 439, 192 S. W. 508; National Surety Co. v. Daviess County Planing Mill Co., 213 Ky. 670, 281 S. W. 791; Mid-Continent Petroleum Corp. v. Southern Surety Co., 225 Ky. 501, 9 S. W. (2d) 229. On the other hand, when the bond is one solely to secure performance of the contract and contains no language from which an express covenant for the benefit of third parties may be derived,

an action thereon by a stranger to the contract may not be maintained. Dayton Lumber & Mfg. Co. v. New Capital Hotel, 222 Ky. 29, 299 S. W. 1063; Kentucky Rock Asphalt Co. v. Fidelity & Casualty Co. (6 C. C. A.) 37 F. (2d) 279; Owens v. Georgia Life Ins. Co., 165 Ky. 507, 177 S. W. 294. The problem presented, therefore, is the interpretation of the written instruments to ascertain whether they contain any provision for the benefit of the materialmen, of whom appellant was one. If so, the line of cases first indicated controls, and the action may be maintained; but, if the contract and accompanying bond, fairly construed, do not contain any provision for the benefit of the materialmen, the second line of cases govern, and the demurrer was properly sustained.

It is argued that the distinction in the decisions depends upon the character of the subject-matter of the contract, and, when the contract concerns a public improvement, as here, it will be presumed that the bond was intended for the benefit of laborers and materialmen. It is said that they are unable to assert a lien on public property, and for that reason the bond is provided to supply the rights ordinarily given by lien laws. In amplification of the argument, it is insisted that, when the subject-matter of a contract is a private structure, the lien laws of the state afford ample remedy, and it is unnecessary to resort to a bond for their protection. But such distinction is artificial and drawn from the accidental circumstances of the cases. The true basis for the diverging decisions is found in the terms of the instruments involved. The liability of the surety is measured by the terms of his contract, and the right of the third party to sue must be derived from the document signed by the surety. If the bond binds the surety to pay an obligation, even though to a third party, the agreement is binding, and supported by sufficient consideration. Cf. U. S. Fidelity & Guaranty Co. v. United States, 191 U. S. 416, 24 S. Ct. 142, 48 L. Ed. 242; U. S. for Use of Hill v. American Surety Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437. Compare Second National Bank v. Grand Lodge, F. & A. M., 98 U. S. 124, 25 L. Ed. 76. The same motive that prompted the passage of material and labor lien laws is sufficient to suggest the expediency of a surety contract for the benefit of those who perform labor or furnish material. A private owner may well desire to be free from the vexation of claims or suits, and to that end may require a bond to protect him against vexation as

well as liability. It is conceivable that a private owner might wish not to have upon his property a structure composed of materials or erected by labor not paid for by the contractor. So, if the contract is sufficient in its terms to manifest an intention that the contractor shall pay for the labor and material, it is a valid obligation and enforceable in favor of any person for whose benefit it may have been executed. Cf. Chesapeake & Ohio Ry. Co. v. Wadsworth Electric Mfg. Co. (Ky.) 28 S. W. (2d) —, decided June 3, 1930. Nor is it accurate to say that the liability of the surety in a public contractor's bond depends upon the absence of any power to enforce a lien on public property. Allen County v. U. S. F. & G. Co., 122 Ky. 825, 93 S. W. 44, 29 Ky. Law Rep. 356. It is possible that provisions in surety bonds for the payment of third parties may have originated in a desire to protect persons whose security otherwise would be precarious; nevertheless the liability on a particular bond must be deduced from its own specific terms, construed liberally to effectuate the purpose for which it was given. National Surety Co. v. Price, 162 Ky. 632, 172 S. W. 1072.

We are unable to find in the language of the contract and bond exhibited in this case any language designed for the protection of the laborers or materialmen. The contract simply obligated the contractor to furnish all materials and to perform all work required for the construction of the improvement. The bond of the surety company obligated the contractor well and truly to keep and perform all the terms and conditions of his contract, and to indemnify the commonwealth against any loss by failure of the contractor to construct the bridge. The provisions to the effect that the amount paid by the commonwealth to the contractor included payment for equipment, forms, tools material, and incidental work necessary to make a complete structure merely described what was included in the contract price. It evinces no intention to compel payment therefor to those from whom the contractor obtained them. If the contractor obtained material on credit and constructed the bridge, no breach of contract could be claimed, even though he failed to pay his creditor for the materials. Such a construction of the contract is made necessary by its terms, and there is no provision in it indicating otherwise. Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement to which he is not a party, he must at least show that it was intended for his

direct benefit. Robins Dry Dock & Repair Co. v. Geo. Flint, 275 U. S. 303, 48 S. Ct. 134, 72 L. Ed. 290.

In Dayton Lumber & Mfg. Co. v. New Capital Hotel, 222 Ky. 29, 299 S. W. 1063, 1064, the bond was "for the benefit of the obligee and not for the benefit of the materialmen." In Owens v. Georgia Life Ins. Co., 165 Ky. 507, 177 S. W. 294, 297, the court described the obligation of the surety as one whereby "the surety simply agreed to indemnify the city against any breach of the contract by its principal." In contracts of that character, liability is not assumed for the advantage of third parties, and recovery by them is denied. On the other hand, the bond involved in the case of National Surety Co. v. Daviess County Planing Mill Co., 213 Ky. 670, 281 S. W. 791, contained an express obligation that the principal should pay all persons who had contracts directly with the principal for labor or material. In the case of Mid-Continent Petroleum Corporation v. Southern Surety Co., 225 Ky. 501, 9 S. W. (2d) 229, the bond contained a provision to the effect that the principal and surety should pay for all labor performed or furnished and for all materials used in carrying out the contract. In contracts of that type a direct liability is enforced in favor of third parties who may come within the purview and purpose of the provision. If the distinctions mentioned are borne in mind, there is no difficulty in classifying the cases, as the contracts in every instance are to be enforced only according to their intent and purpose as manifested by their terms. Morrison v. Payton, 104 S. W. 685, 31 Ky. Law Rep. 992; Albin Co. v. Com., 128 Ky. 295, 108 S. W 299, 33 Ky. Law Rep. 367. Since the contracts involved in this case contained no provision for the benefit of the class to which appellant belonged, the court did not err in sustaining a demurrer to the petition as amended.

The judgment is affirmed.